UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GJETO PRELAJ<br><br>        Petitioner,<br><br>-v-<br><br>UNITED STATES OF AMERICA,<br><br>        Respondent. | No. 18-cv-4864 (RJS) |
| UNITED STATES OF AMERICA<br><br>-v-<br><br>GJETO PRELAJ,<br><br>        Defendant. | No. 16-cr-55-1 (RJS)<br><br>OPINION AND ORDER |

RICHARD J. SULLIVAN, Circuit Judge:

    Petitioner Gjeto Prelaj brings this petition for the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2255. Specifically, Prelaj challenges his sentence of principally 54 months' imprisonment for access device fraud and aggravated identity theft on the grounds that the Court lacked jurisdiction to impose the sentence and that he received ineffective assistance of counsel at sentencing. (Doc. No. 272 ("Petition").[1]) For the reasons set forth below, the Court denies the Petition.

---

[1] Unless otherwise indicated, all docket citations refer to the docket in Prelaj's criminal case, *United States v. Prelaj*, No. 16-cr-55-1 (RJS).

## I. BACKGROUND

### A. FACTS

From about January 2015 to December 2015, Prelaj led a conspiracy to use, sell, and distribute debit-card skimming machines and counterfeit access devices.[2] (PSR ¶ 20.) He supplied the skimming machines to coconspirators Erbi Kau, Bledar Batska, Enis Mustafa, and Nikolin Dedushi, and directed them to install the devices on automatic teller machines ("ATMs"), thereby enabling members of the conspiracy to fraudulently obtain card information from cardholders without their permission. (*Id.*)  Thereafter, Prelaj and his six coconspirators created and subsequently used counterfeit access cards to fraudulently withdraw money from the cardholders' accounts. (*Id.*)  Victor Tomescu participated in the conspiracy by brokering the sale of a skimming device to undercover agents. (*Id.* ¶ 21.)  Over the course of the conspiracy, Prelaj was responsible for losses of more than $150,000 but less than $250,000. (*Id.* ¶ 53.)

### B. PROCEDURAL HISTORY

On January 26, 2016, a grand jury in the Southern District of New York returned a superseding indictment charging Prelaj in seven counts:  conspiracy to commit access device fraud, in violation of 18 U.S.C. § 1029(b)(2) ("Count One"); producing, using, and trafficking in counterfeit access devices, in violation of 18 U.S.C. § 1029(a)(1) and § 2; possessing fifteen or more counterfeit and unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3) and § 2; possessing and selling a skimming device in Queens, New York, in violation of 18 U.S.C.

---

[2] The facts are drawn from Prelaj's presentence investigation report ("PSR") (Doc. No. 285). In making its ruling, the Court has also considered the Petition, Prelaj's memorandum of law in support thereof (Doc. No. 273 ("Prelaj Decl.")), the government's memorandum of law in opposition to the Petition (No. 18-cv-4864 (RJS) Doc. No. 7 ("Gov't Opp'n")), and Prelaj's reply memorandum of law in support of the Petition (Doc. No. 280), as well as all attached exhibits.  Prelaj proceeded *pro se* in filing the Petition and supporting memoranda, but has since retained Murray Richman as counsel in this matter.

§ 1029(a)(4) and § 2; possessing and installing skimming devices on ATMs in or around Las Vegas, Nevada, in violation of 18 U.S.C. § 1029(a)(4) and § 2; effecting transactions with one or more access devices issued to another person to receive payment and other things of value during a one-year period with an aggregate value greater than $1000, in violation of 18 U.S.C. § 1029(a)(5) and § 2; and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1), § 1028A(b), and § 2 ("Count Seven"). (Doc. No. 4.) Tomescu, Batska, Dedushi, Kau, Mustafa, and Mehmet Bogic were all charged as codefendants in the Indictment. (*Id.*)

Prelaj pleaded guilty to Counts One and Seven pursuant to a plea agreement on September 21, 2016. (Gov't Opp'n Ex. A ("Plea Agreement").) For Count One, the Plea Agreement calculated a total offense level of 19, which included a two-level increase under U.S.S.G. § 3B1.1(c) because Prelaj was an "organizer, leader, manager or supervisor in the criminal activity." (*Id.* at 2.) With respect to Count Seven, the Plea Agreement explained that the offense required a mandatory sentence of 24 months' imprisonment to be served consecutive to any other undischarged term of imprisonment. (*Id.* at 3.) With a criminal history category of I, the advisory guidelines range for Count One was 30 to 37 months' imprisonment. (*Id.*) Together with the mandatory 24 months' imprisonment for Count Seven, the total stipulated guidelines range contemplated by the Plea Agreement was 54 to 61 months' imprisonment. (*Id.*)

Under the express terms of the Plea Agreement, the parties stipulated that "neither a downward nor an upward departure from the Stipulated Guidelines Range . . . [was] warranted," and that "neither party w[ould] seek any departure or adjustment pursuant to the Guidelines that [was] not set forth [t]herein." (*Id.*) The parties further stipulated that "the sentence to be imposed upon the defendant [would be] determined solely by the Court," that "the Guidelines are not binding on the Court," and that "the defendant w[ould] have no right to withdraw his plea of guilty should

the sentence imposed by the Court be outside the Guidelines range set forth" in the Plea Agreement. (*Id.* at 4.) The Plea Agreement further specified that "[i]n the event that . . . the Court contemplates any Guidelines adjustments, departures, or calculations different from those stipulated to above, . . . the parties reserve[d] the right to answer any inquiries and to make all appropriate arguments concerning the same." (*Id.*)

During Prelaj's plea allocution on September 21, 2016, Prelaj testified under oath that he had read the Plea Agreement, discussed it with his counsel, Lee Alan Ginsberg ("Counsel"), and had ample opportunity to ask Counsel questions about the Plea Agreement and the consequences of pleading guilty. (Doc. No. 130 at 34–35.) Counsel emphasized that he had reviewed the document with Prelaj "at least twice." (*Id.* at 34.) Prelaj asserted that he understood that the document was an agreement between himself and the government, that the Court did not have any obligations under the Plea Agreement, and that "[i]f [the Court] disagree[d] with anything that is in [the Plea Agreement], that w[ouldn't] entitle [Prelaj] to take [his] guilty plea back later." (*Id.* at 36.) He also stated that he understood the fact that the Court could determine, with respect to Count One, that the guidelines range was higher or lower based on its own findings. (*Id.* at 36.)

The Court sentenced Prelaj on May 25, 2017. During that proceeding, after reviewing the facts set forth in the PSR, the Court *sua sponte* questioned why the parties had agreed to a two-level leadership role increase under U.S.S.G. § 3B1.1(c) instead of a four-level increase under § 3B1.1(a), which applies to organizers or leaders of conspiracies with five or more participants. (Doc. No. 242 ("Sentencing Tr.") at 12–13.) The government explained that it determined a two-level increase was appropriate because the "core conspiracy" involved Prelaj and four other participants – Mustafa, Dedushi, Kau, and Batska. (*Id.* at 13:11–14.) Noting that § 3B1.1(a) applies to "[c]riminal activity that involved five or more participants" (*id.* at 21:15–20), the Court observed that Prelaj's

conspiracy clearly included him and at least four others. The government, after admitting that it "did not necessarily include [Prelaj] in th[e] five" participants, ultimately acknowledged that § 3B1.1(a) appeared to apply to Prelaj's conduct. (*Id.* at 21:11–22.)

Defense counsel declined to "concede[] the extra two points" and expressed his view that "the government [was] now backing off what [was] in the plea agreement." (*Id.* at 21:25–22:11.) The government reiterated that it was "sticking to what it agreed to as . . . the appropriate guidelines range," but recognized that it had "to be candid with the [C]ourt" and that if the Court "believe[d] that there was a reading of the guidelines that [was] not appropriate, [the government] need[ed] to answer the [C]ourt's questions honestly." (*Id.* at 22:12–20.) Although Counsel responded that "there are more facts about the offense conduct than those that are contained in the presentence report" (*id.* at 18:1–2), he did not object to any specific facts in the PSR (*id.* at 7:9–11) or request a *Fatico* hearing to establish the number of individual participants in the conspiracy (*id.* at 25:4–6). Those decisions were based, in part, on Counsel's determination that it was unclear whether he "could prevail at a hearing" (*id.* at 24:21–22), that the extra two points would not result in "a multiyear type of increase in the guidelines" (*id.* at 25:1–2), and that, after conferring with Prelaj, Prelaj had "sufficient confidence in [him] to make [his] sentencing arguments so that [sentencing] should proceed today" (*id.* at 23:13–15). In the end, Counsel lodged a formal objection to the Court's determination that the four-level role enhancement was warranted, but stated that Prelaj was "prepared to go ahead" with sentencing. (*Id.* at 25:4–6.)

The Court also directly addressed Prelaj on this subject, whereupon Prelaj stated that he "trust[ed] all [of] you" and that "[i]f it's necessary [for] your Honor [to] give me those two extra points, that's okay." (*Id.* at 23:18–20.) The Court impressed upon Prelaj that it was his right to have a *Fatico* hearing, that the Court wouldn't be "annoyed," "inconvenience[d]," or "bothered" if

he requested one, and that it would not otherwise "hurt" Prelaj at sentencing. (*Id.* at 24:3–9.) Nevertheless, Prelaj declined to press for a *Fatico* hearing, stating that he would "go with [the Court's] decision." (*Id.* at 24:10–12.)

The Court ultimately determined that a four-level increase pursuant to § 3B1.1(a) was warranted, thereby resulting in a total offense level of 21, which, together with a criminal history category of I, increased the advisory guidelines range for Count One to 37 to 46 months' imprisonment. (*Id.* at 25:9–23.) With the mandatory 24-month consecutive sentence for Count Seven, the total advisory guidelines range was 61 to 70 months' imprisonment. However, in light of Prelaj's family and community ties, his remorse, the circumstances of his youth in Albania, the fact that he faced deportation and extended immigration custody as a result of his conviction, and the fact that the actual, as opposed to intended, losses in the conspiracy amounted to approximately $10,000, the Court determined that a sentence of 30 months' imprisonment on Count One, to be followed by a mandatory consecutive term of 24 months on Count Seven, was sufficient but not more than necessary to meet the objectives of sentencing set forth in 18 U.S.C. § 3553(a). (*Id.* at 47:1–54:19.) In imposing this sentence, the Court emphasized two points. First, it stated that it was originally intending to impose a total sentence of 60 months' imprisonment but was persuaded to impose a shorter sentence based on the factors raised by Counsel during the proceeding. (*Id.* at 51:13–52:1.) Second, it explained that Prelaj's sentence "would [have] be[en] the same whether [the Court] gave the two [extra] points or didn't give the two points" and that "whether [it was] two points or four points [didn't] affect [the Court] that much." (*Id.* at 51:6–12.)

The Court advised Prelaj of his right to appeal his sentence but noted that the Plea Agreement included an appeal waiver for any sentence of 61 months or less. (*Id.* at 55:1–8.) Prelaj never appealed his sentence. On May 24, 2018, one day shy of the one-year anniversary of his sentencing,

Prelaj filed this Petition and a memorandum of law in support thereof. (Doc. Nos. 272, 273.) He contends that the Court lacked jurisdiction to impose the sentence because the government breached the Plea Agreement (Petition at 6–7), and that he received ineffective assistance of counsel at sentencing because his lawyer failed to advise him of his right to withdraw from the Plea Agreement after the government breached that agreement (*id.* at 5), incorrectly advised him regarding the government's ability under the Plea Agreement to argue in favor of a four-point leadership role enhancement under U.S.S.G. § 3B1.1(a) (*id.* at 8), and failed to object to the PSR (*id.* at 4). The government subsequently submitted its memorandum of law in opposition to the Petition on September 3, 2018 (No. 18-cv-4864 (RJS) Doc. No. 7), and Prelaj filed his reply memorandum of law on October 9, 2018 (Doc. No. 280).

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255, "a federal prisoner may move the sentencing court to vacate, set aside, or correct the sentence on the ground that such sentence was illegally imposed." *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009). Relief under § 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d. 8, 12 (2d Cir. 1995) (internal quotation marks omitted). A claim of ineffective assistance of counsel, if proven, constitutes constitutional error warranting relief under § 2255. *See United States v. Carmichael*, 216 F.3d 224, 227 (2d Cir. 2000).

### A. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees a criminal defendant's right to the assistance of counsel. U.S. Const. amend. VI. When challenging the effectiveness of counsel's assistance, a party must demonstrate that (1) counsel's representation "fell below an

objective standard of reasonableness" measured against "prevailing professional norms," and (2) this "deficient performance prejudiced the defense" in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984).  A court must reject a petitioner's ineffective assistance of counsel claim if it fails to meet either prong.  *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013).

With respect to *Strickland*'s first prong, a court "must judge [counsel's] conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices."  *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690).  The court starts from the "strong presumption" that counsel's conduct fell "within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  "Actions and/or omissions taken by counsel for strategic purposes generally do not constitute ineffective assistance of counsel."  *Gibbons v. Savage*, 555 F.3d 112, 122 (2d Cir. 2009).  Because there are many different ways to provide effective assistance in any given case, and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way," there is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Strickland*, 466 U.S. at 689–90.

With respect to *Strickland*'s second prong, an "error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 691).  Rather, even if a petitioner is able to establish that his counsel's conduct was objectively unreasonable, he must still demonstrate prejudice, which means that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Strickland*, 466 U.S. at 694. While this prejudice prong "does not require a showing that counsel's actions more likely than not altered the outcome," it does require a petitioner to show that "[t]he likelihood of a different result [was] substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (internal quotation marks omitted).

### B. Breach of Plea Agreement

The Court interprets plea agreements "*de novo* and in accordance with principles of contract law." *United States v. Riera*, 298 F.3d 128, 133 (2d Cir. 2002). In determining whether a plea agreement has been breached, the Court considers "the reasonable understanding of the parties as to the terms of the agreement." *United States v. Colon*, 220 F.3d 48, 51 (2d Cir. 2000). Given the government's "advantages in bargaining power," ambiguities "must be resolved in favor of the defendant." *Riera*, 298 F.3d at 133 (internal quotation marks omitted). Additionally, the Court must "temper the application of ordinary contract principles with special due process concerns for fairness and the adequacy of procedural safeguards." *United States v. Granik*, 386 F.3d 404, 413 (2d Cir. 2004) (internal quotation marks omitted). The government breaches a plea agreement where its "commentary reasonably appears to seek to influence the court in a manner incompatible with the agreement . . . notwithstanding formal language of disclaimer." *United States v. Amico*, 416 F.3d 163, 167 n.2 (2d Cir. 2005).

The remedy for the breach of a plea agreement is either rescission – withdrawal of the plea – or specific performance through resentencing, determined at the court's discretion. *Puckett v. United States*, 556 U.S. 129, 137 (2009). Nevertheless, a *de minimis* breach will preclude either remedy where "the violation is so minor that it does not cause the defendant to suffer any meaningful detriment." *United States v. Vaval*, 404 F.3d 144, 155 (2d Cir. 2005). In determining whether the

defendant suffered a meaningful detriment, the Court evaluates whether the sentence imposed "comport[ed] with the reasonable understanding and expectations of the defendant as to the sentence for which he had bargained." *Id.* at 156 (internal quotation marks omitted).

### III. DISCUSSION

Prelaj raises four grounds for relief in his Petition. First, he claims that the Court lacked jurisdiction to impose the sentence because the government's alleged breach of the Plea Agreement invalidated that Agreement. (Petition at 6–7.) Second, Prelaj contends that Counsel was ineffective for failing to advise him of his right to withdraw from the Plea Agreement after the "government breached [the] agreement in open court." (*Id.* at 5.) Third, he maintains that Counsel was ineffective for advising him that the Plea Agreement precluded the government from arguing in favor of a four-point leadership role enhancement under U.S.S.G. § 3B1.1(a) instead of the stipulated two-point enhancement under § 3B1.1(c). (*Id.* at 8.) Fourth, Prelaj asserts that Counsel was ineffective for failing to file objections to the PSR despite its "factual inaccuracies." (*Id.* at 4.) The Court considers each argument in turn and concludes that all are without merit.

### A. The Court Had Jurisdiction to Impose the Sentence

Prelaj argues that the government's alleged breach of the Plea Agreement invalidated it, and that the Court therefore lacked jurisdiction to impose his sentence "without affording [him] [the] opportunity to withdraw from the agreement." (Petition at 7.) Prelaj's reasoning fails at the start since the government did not breach the Plea Agreement. Accordingly, the Court had jurisdiction to impose Prelaj's sentence.

Prelaj alleges that the government breached the Plea Agreement by making "little to no effort to defend" it and instead "effectively support[ing] the application of a four[-]level role enhancement." (Prelaj Decl. ¶ 17.) However, faced with a similar situation involving a nearly

10

identical plea agreement, the Second Circuit determined that the government did not breach its agreement where (1) it merely responded to the court's specific inquiry; (2) the plea agreement's language permitted the government to respond to such inquiries; and (3) the government repeatedly emphasized that it was not advocating for an upward departure. *Riera*, 298 F.3d at 134; *see also United States v. Goodman*, 165 F.3d 169, 173 (2d Cir. 1999) ("[T]he [g]overnment's compliance with the District Court's direction to comment on the facts and the law did not violate the plea agreement.").

Here, the Plea Agreement provided that the government would not seek "any departure or adjustment pursuant to the Guidelines" that was not set forth in the Plea Agreement, but expressly permitted the government to "answer any inquiries and to make all appropriate arguments" if the Court contemplated any "adjustments, departures, or calculations different from those stipulated to" in the Plea Agreement. (Plea Agreement at 3–4.) Answering the Court's inquiries is precisely what occurred at sentencing. After reviewing the facts in the PSR, the Court *sua sponte* questioned why the parties had agreed to a two-level leadership role enhancement under U.S.S.G. § 3B1.1(c) instead of a four-level increase under § 3B1.1(a). (Sentencing Tr. at 12–13.) The government responded to the Court's questioning, explaining its reasoning regarding why it thought a two-level increase was appropriate. Throughout the back-and-forth with the Court, the government emphasized that it was "sticking to what it agreed to as to the appropriate guidelines range" and that it was "not backing out" of the Plea Agreement, but that it had a duty "to be candid with the [C]ourt . . . [and] to answer the [C]ourt's questions honestly." (*Id.* at 22–23.) The government subsequently requested "the sentence that it agreed upon with defense counsel in the plea agreement." (*Id.* at 41:14–17.) Therefore, rather than demonstrating a breach of the Plea Agreement, the government's conduct at

sentencing evidences that it understood and abided by its commitments under the Plea Agreement. Prelaj thus fails to identify a defect in the Court's jurisdiction to impose his sentence on this basis.

### B. Counsel's Failure to Advise Prelaj of His Right to Withdraw from the Plea Agreement Did Not Constitute Ineffective Assistance

Prelaj contends that Counsel was ineffective for failing to advise him of his right to withdraw from the Plea Agreement after the "government breached [it] in open court." (Petition at 5.) As the Court explained above, however, Prelaj has failed to establish that the government breached the Plea Agreement. Prelaj thus necessarily fails to demonstrate that Counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. He likewise cannot demonstrate prejudice, since there is no "reasonable probability" that the outcome of sentencing would have been different but for Counsel's performance. *Id.* at 694. Consequently, Prelaj's ineffective assistance claim fails.

### C. Counsel's Advice Concerning the Government's Obligations Under the Plea Agreement Did Not Constitute Ineffective Assistance

Prelaj similarly maintains that Counsel was ineffective for advising him that the Plea Agreement "comprehensively precluded the government from arguing in favor of a four[-]point leadership role enhancement instead of the stipulated two points." (Petition at 8.) He claims that he was prejudiced "because the government did in fact argue for four points." (*Id.*) Once again, Prelaj cannot meet either prong of the *Strickland* standard.

First, Counsel's advice was not unreasonable since it was correct. The Plea Agreement *did* in fact preclude the government from advocating for a four-point leadership role enhancement. (Plea Agreement at 3 ("[N]either party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein.").) As a result, Counsel's characterization of the Plea Agreement was clearly accurate. Second, and more importantly, as explained above, the government never actually advocated for the four-point enhancement at sentencing – it merely responded to the Court's

12

questions, as it was permitted to under the express terms of the Plea Agreement. Consequently, Prelaj was in no way prejudiced by Counsel's allegedly erroneous advice. Therefore, Prelaj's ineffective assistance claim fails here too.

### D. Counsel's Failure to Object to the PSR Did Not Constitute Ineffective Assistance

Prelaj asserts that Counsel was ineffective for failing to object to facts in the PSR, particularly the "vastly exaggerated role attributed to him as a leader of a large conspiracy, the monetary loss amount and sale of a skimming device." (Prelaj Decl. ¶ 11.) He alleges that he expressed to Counsel "great reservations and disagreements" about these facts, but that Counsel assured him that "despite the inaccuracy of the[] facts it would be harmless to not object to the PSR because the defense, prosecution and probation [were] all in agreement about the resulting sentencing guideline range and that the plea agreement comprehensively preclude[d] the government from arguing for any guideline adjustment whatsoever." (*Id.* ¶¶ 11–12.) He further contends that Counsel misunderstood the Court's obligation to "independently calculate the applicable guideline range," which led Counsel "to not file any objections whatsoever to the PSR." (*Id.* ¶¶ 18–19.) Prelaj claims that he was "obvious[ly] . . . prejudiced" because the Court determined at sentencing that a four-level leadership role enhancement was warranted based on the undisputed facts in the PSR, thereby resulting in a higher advisory guidelines range. (*Id.* ¶ 20.) He states that if Counsel had timely objected to facts in the PSR, the Court – "equipped with accurate and properly parsed facts" – would have "found downward adjustments and/or variations to the 'Stipulated Guideline Range.'" (*Id.* ¶ 21.)

But Prelaj fails to identify any specific facts in the PSR to which Counsel should have objected or that were inaccurate. In the § 2255 context, "presentation of conclusory allegations unsupported by specifics is subject to summary dismissal." *Gonzalez*, 722 F.3d at 131 (quoting

13

*Blackledge v. Allison*, 431 U.S. 63, 74 (1977)); *see also Santiago-Diaz v. United States*, 299 F. Supp. 2d 293, 302 (S.D.N.Y. 2004) (finding that petitioner's conclusory allegation that counsel failed to object to the PSR without petitioner setting forth specific objections failed to support ineffective assistance claim).  Here, Prelaj asserts that the PSR exaggerated his role in the conspiracy, but he does not actually deny that he was, in fact, the leader.  While *pro se* filings must be construed liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), Prelaj's ineffective assistance claim fails based on his conclusory allegation of failure to object to nebulous "inaccurate facts" in the PSR.

Moreover, Prelaj himself informed the Court at sentencing that he wished to proceed with sentencing rather than to object to the PSR or to postpone sentencing to hold a *Fatico* hearing. (Sentencing Tr. at 23–24.)  Even after the Court assured him that he had the right to a hearing and that the Court would not be angry or "hurt" him if he chose to exercise that right, Prelaj expressly declined to proceed with a *Fatico* hearing and stated that he would "go with [the Court's] decision." (*Id.* at 24:10–12.)  Indeed, although Counsel expressed a willingness to make additional submissions and call witnesses at a *Fatico* hearing, he eventually acquiesced in Prelaj's express desire to forego a hearing.  (*Id.* at 7:9–11, 18:1–2, 24:21–25:6.)

Based on these facts, the Court finds that Counsel's conduct did not fall "below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688.  To the contrary, the record reflects that Counsel heeded *Strickland*'s admonition that attorneys have a "particular dut[y] to consult with the defendant on important decisions."  *Id.*  Counsel's decision to forego a *Fatico* hearing clearly falls within the wide range of acceptable professional assistance contemplated by *Strickland*.  *Id.* at 689.

Prelaj also fails to demonstrate prejudice.  Prelaj's claim that accurate facts would have warranted a downward departure or variance finds no support in the record, which clearly indicated that Prelaj was a leader and organizer of criminal activity involving five or more participants.  More

importantly, the Court explicitly stated that its sentence would have been the same regardless of whether the leadership enhancement had been two or four points. (Sentencing Tr. at 51.) Indeed, the 54-month sentence Prelaj received was at the lowest end of the advisory guidelines range stipulated to in the Plea Agreement. Prelaj has therefore failed to prove prejudice as required by *Strickland*.

### IV. CONCLUSION

For the reasons set forth above, the Court concludes that it had jurisdiction to impose Prelaj's sentence and that Prelaj has failed to demonstrate that Counsel provided him with ineffective assistance. Accordingly, IT IS HEREBY ORDERED THAT the Petition is DENIED. In addition, because Prelaj has not "made a substantial showing of the denial of a constitutional right," the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); *see also Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005). Furthermore, because any appeal would "lack[] an arguable basis in law or fact," *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995), the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion and Order would not be taken in good faith and, therefore, Prelaj may not proceed *in forma pauperis*. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is respectfully directed to terminate the motion pending at Doc. No. 272 in No. 16-cr-55-1 (RJS), to close No. 18-cv-4864 (RJS), and to mail a copy of this Opinion and Order to Prelaj.

SO ORDERED.

Dated:   July 8, 2020
         New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation